IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

FLOYD J. WHITE, et al.,

                Plaintiffs,

v.                                                  CIVIL ACTION NO. 2:13-cv-30533

S/TPR. R.A. MARSH, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending are the motion to amend the Complaint of plaintiffs, Floyd J. White and Deborah L. White (collectively "Plaintiffs") and the motion to dismiss filed by defendants Trooper R.A. Marsh ("Trooper Marsh")[1] and the West Virginia State Police[2] (collectively "Defendants")[3]. For

---

[1] Plaintiffs' Complaint asserts claims against Trooper Marsh in his individual and official capacity. (ECF 1.) Plaintiffs' Amended Complaint, submitted in response to Defendants' motion to dismiss, appears to concede that their section 1983 claims against Trooper Marsh in his official capacity are impermissible. (*See* ECF 9 (acknowledging that section 1983 causes of action against State of West Virginia are barred).) *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

[2] Plaintiffs' Complaint and Amended Complaint refer to the West Virginia State Police as both "an agency of the State of West Virginia" (ECF 1 at 1; ECF 9-1 at 1) and "a political subdivision of the State of West Virginia" (ECF 1 at 2; ECF 9-1 at 2). Plaintiffs make no argument in their response brief, however, regarding the status of the State Police. In light of Plaintiffs' concession that their section 1983 claims against the state are barred, however, and in further light of the disposition of Defendants' motion to dismiss, the Court has no occasion to address the issue further. *See Krein v. W. Virginia State Police*, 2:11-CV-00962, 2012 WL 2470015, at *1, 6 (S.D. W. Va. June 27, 2012) (explaining that "[t]he West Virginia State Police . . . is an agency of the State of West Virginia" and that "state agencies, or state officials sued in their official capacities cannot be sued for damages under section 1983").

[3] In their Amended Complaint, Plaintiffs assert section 1983 claims against Trooper Marsh in his individual capacity and assert a state constitutional tort count against both Defendants. (ECF 9-1.) In consideration of this fact as well as the fact that the motion to dismiss is brought by both defendants the Court refers herein to the defendants collectively.

1

the reasons that follow, Plaintiffs' motion to amend the Complaint [ECF 9] is **GRANTED** and Defendants' motion to dismiss [ECF 6] is **GRANTED**.

## I. BACKGROUND

This case arises from a search of Plaintiffs' property conducted as part of a larger investigation into the theft of motor vehicles.[4] As relevant here, Plaintiff Floyd White's brother, Marvin White, was being investigated in association with certain motor-vehicle thefts and other incidents. In the fall of 2011 Trooper Marsh obtained and executed a search warrant ("Search Warrant #1") for Marvin White's residence.

Later that year, on December 1, 2011, Trooper Marsh applied for and obtained a search warrant for Plaintiffs' property as part of this investigation ("Search Warrant #2"). (ECF 6-1.) The warrant asserted that Marvin White had committed an offense of receiving or transferring a stolen vehicle, and that such stolen property and other evidence would be located at the identified property. The warrant application included an attachment describing the location of the property to be searched and how to get to the property. Also included were five aerial photographs of the property. The description did not contain any information regarding who owned the property.

Trooper Marsh's accompanying affidavit detailed the history of the investigation of Marvin White, including the October search of Marvin White's residence. The affidavit further provided that Trooper Marsh had learned of Plaintiff Floyd White's association with Marvin White and his reported involvement in the stolen vehicle scheme. The affidavit also described information obtained concerning the property on which certain stolen vehicles were kept and

---

[4] In the memorandum accompanying their motion to dismiss, Defendants have painstakingly detailed the scope of the investigation that led to the disputed warrants. As Defendants largely acknowledge (ECF 7 at 2 n.3), however, most of these facts are not dispositive for purposes of the instant motion. In light of the disposition *infra* contained in Part II and Part III.B, the facts recited herein are drawn from Plaintiffs' Amended Complaint and those exhibits attached to the Defendants' motion to dismiss that are incorporated by Plaintiffs' Amended Complaint. For purposes of considering the motion to dismiss, Plaintiff's well-pleaded factual allegations are accepted as true.

Trooper Marsh's efforts to locate that property, including a flyover of Floyd White's property that identified certain vehicles that may have been stolen.

On December 5, 2011, the police executed Search Warrant #2 and seized several items, including vehicles.[5] The search was not completed due to weather conditions. (ECF 6-2 at 12.)

On December 14, 2011, Trooper Marsh applied for an additional search warrant ("Search Warrant #3") for Plaintiffs' property to continue the search commenced earlier that month. (ECF 6-2 at 1.) The warrant again identified Marvin White as having committed certain vehicle-theft crimes. (ECF 6-2 at 2.) The property description in this warrant application was substantially similar to that for Search Warrant #2, but provided some additional identifying information and GPS coordinates for the property. (ECF 6-2 at 5.) Trooper Marsh's affidavit further identified the prior search as having been executed at Plaintiffs' residence and explained that investigators sought to continue the prior search because it had not been completed due to inclement weather conditions. (ECF 6-2 at 11.)

Nearly a year and a half later, on May 14, 2013, a Fayette County grand jury indicted Plaintiffs on various state charges relating to stolen property.[6] (ECF 6-2 at 15−20.) Plaintiffs were arrested and detained (ECF 9-1 at 4), and at some point during these criminal proceedings moved to suppress the evidence obtained during the execution of Search Warrants #2 and #3. (ECF 6-2 at 23, 49.)

On July 2, 2013, the Circuit Court of Fayette County granted Plaintiffs' motion, holding that search warrants that don't describe the property of the person named on the face of the

---

[5] Plaintiffs allege that five vehicles owned by the Plaintiffs were seized during the December 5, 2011, execution of Search Warrant #2 and that these vehicles were subsequently destroyed in an arson at the West Virginia State Police Rainelle Detachment. (ECF 9-1 at 4.) Because the Court finds that Plaintiffs have failed to plead a constitutional violation, the Court need not address the parties' apparent dispute regarding the cause of this arson nor evaluate the degree to which Plaintiffs may legitimately seek recovery for any such property damage.

[6] Plaintiff Floyd White was additionally indicted on a firearm offense. (ECF 6-2 at 18.)

warrant are flawed. (ECF 6-2 at 46, 49.) That same day, following this ruling, the state court dismissed the indictments upon motion by the State of West Virginia. (ECF 9-1 at 4.)

On November 27, 2013, Plaintiffs filed this civil action.

## II. MOTION TO AMEND

Plaintiffs seek leave to amend their Complaint to drop certain counts and make other corrections.

Federal Rule of Civil Procedure 15(a)(1)(B) states, in pertinent part, that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." If a party seeks to amend its pleadings in all other cases, it may only do so "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason "such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Ward Elec. Serv. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987); *Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984).

Here, Plaintiffs Motion to Amend was filed on March 14, 2014, which is within 21 days of the Defendants' filing of their motion to dismiss on February 28, 2014. It is, therefore, properly submitted pursuant to Fed. R. Civ. P. 15(a)(1)(B).

Moreover, even were that not so, permitting amendment would be proper here because the Amended Complaint drops causes of action that Plaintiff concedes are barred by existing

4

case law and makes a number of important clerical corrections to clean up what Plaintiffs have acknowledged was a "sloppy" initial pleading (ECF 8 at 8).  Moreover, the Amended Complaint does not alter the facts or raise new claims.  Finally, Defendants have not objected.  To the contrary, they have addressed the Amended Complaint in their reply to Plaintiffs' response to the motion to dismiss.

For all these reasons, and pursuant to Fed. R. Civ. P. 15(a)(1)(B), the Court **GRANTS** Plaintiffs' motion for leave to file an Amended Complaint [ECF 9].  The Court will proceed to consider Defendants' motion to dismiss as it relates to those claims that remain in the Amended Complaint.

### III.   MOTION TO DISMISS

Plaintiffs' Amended Complaint states two counts under section 1983 and one state constitutional tort count.  (ECF 9-1.)  All of these counts, however, are based on Plaintiffs' assertion that the search warrants executed on Plaintiffs' property were invalid because they were obtained through Trooper Marsh's knowing use of misleading or omitted information resulting in an illegal search and seizure. (ECF 8 at 4−5.)  Plaintiffs' theory of *how* such alleged intentional misstatement or omission constitutes a violation of Plaintiffs' constitutional rights is not entirely clear, but the Court endeavors below to address what appear to be Plaintiffs' arguments.

*A. Legal Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Allegations "must be simple, concise, and direct" and "[n]o technical form is required."  Fed. R. Civ. P. 8(d)(1).  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint.

*See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

B. *Consideration of External Evidence in a Motion to Dismiss*

Defendants have attached to their motion to dismiss the three search warrants, a property receipt related to Search Warrant #2, a copy of the indictment against Plaintiffs, and the transcript of the state-court suppression hearing and ruling. Defendants contend that these documents were incorporated by reference in Plaintiffs' Complaint but that Plaintiffs failed to attach such documents to the Complaint.

Generally, consideration of evidence extrinsic to the complaint converts a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, in reviewing the sufficiency of a complaint, a court is not limited to the four corners of that document. A court

may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004 and Supp. 2007)). Several circuits, including the Fourth, have recognized that a court may in addition consider documents attached to a motion to dismiss when they are "integral to and explicitly relied on in the complaint and . . . the plaintiffs do not challenge [their] authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). *Accord Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998); *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This "prevent[s] parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Indus.*, Inc., 300 F.3d 730, 735 (7th Cir. 2002) (citing *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).

Plaintiffs' Amended Complaint explicitly references the three search warrants and Plaintiffs' state indictment. (ECF 9-1 at 2−3.) It also makes allegations regarding property removed from Plaintiffs' property during the execution of Search Warrant #2 and references the state court's order of dismissal, which was based upon the motion of the State of West Virginia following a suppression hearing.

Plaintiffs do not object to consideration of any of the exhibits proffered by Defendants, nor do they contest the authenticity of the exhibits. Indeed, to the contrary, their response brief specifically cites Search Warrant #2, Search Warrant #3, and the suppression hearing transcript in Defendants' exhibits. (ECF 8 at 2 & nn. 1−2, 5.)

Accordingly, the Court finds that the documents attached to the motion to dismiss are integral to and explicitly relied on in the Amended Complaint and that Plaintiff does not challenge the authenticity of those documents. The Court will, therefore, consider these exhibits without converting Defendants' motion into one for summary judgment.[7]

*C. Discussion*

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 (ECF 9-1 at 5−6), which states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

To prevail, Plaintiffs must show that the official charged acted personally in the deprivation of the Plaintiffs' rights. *Evans v. Martin*, 2:12-CV-03838, 2014 WL 2591281, at *4 (S.D. W. Va. June 10, 2014). Here, Plaintiffs allege that Trooper Marsh violated their Fourth Amendment rights when he obtained and executed Search Warrants #2 and #3.

The Fourth Amendment requires that warrants: (1) be issued by a neutral and detached magistrate, (2) contain a particularized description of the place to be searched and persons or things to be seized, and (3) be based on probable cause, supported by oath or affirmation. *United States v. Hazelwood*, 412 F. App'x 617, 618 (4th Cir. 2011) (unpublished) (citing *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994)).

"The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the

---

[7] For purposes of the disposition of the motion to dismiss, however, the Court observes that only Search Warrant #2, Search Warrant #3, and, to some extent, the suppression hearing transcript, are of significance.

8

premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) (citation omitted).

"'Probable cause exists when there is a fair probability that . . . evidence of a crime will be found in a particular place.'" *Evans v. Chalmers*, 703 F.3d 636, 653 (4th Cir. 2012) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006), *cert. denied,* 134 S. Ct. 98 (U.S. 2013), *and cert. denied,* 134 S. Ct. 617 (U.S. 2013)); *see also Hazelwood*, 412 F. App'x at 618 (4th Cir. 2011) ("The crucial element determining probable cause is 'whether it is reasonable to believe that the items to be seized will be found in the place to be searched.'") (citing *United States v. Lalor,* 996 F.2d 1578, 1582 (4th Cir. 1993)).

Here, Search Warrants #2 and #3 were issued for a place—Plaintiffs' property—in conjunction with an ongoing investigation of Marvin White. That property was identified through both a textual description and photographs. The affidavit in support of Search Warrant #2 further described the property and Trooper Marsh's efforts to identify the property and provided information demonstrating that there was a fair probability that evidence of the stolen vehicle crime alleged against Marvin White would be found on the property described. (ECF 6-1 at 5, 16−19.) The affidavit in support of Search Warrant #3 identified the property in even greater detail, and, in fact, noted that the property was Plaintiffs' residence and clearly demonstrated probable cause. (ECF 6-2 at 11.) *Cf. United States v. Palega*, 556 F.3d 709, 713 (8th Cir. 2009) ("[I]t is sufficient that the description of the premises in the warrant is such that the officer can, with reasonable effort, ascertain and identify the place intended, and avoid

mistakenly searching the wrong premises."). That is all that was required to satisfy the Fourth Amendment.[8] *See, e.g.*, *Hazelwood*, 412 F. App'x at 618.

To the extent that Plaintiffs argue that the ownership of the property to be search needed to be explicitly disclosed in the warrant or affidavit, they cite no pertinent authority in support of that contention nor has any such authority been identified. Indeed, the authority appears to be to the contrary. *See, e.g.*, *Martin v. Indiana State Police*, 537 F. Supp. 2d 974, 981 (S.D. Ind. 2008) ("The Fourth Amendment does not require that a search warrant name the owners or residents of the property to be searched."); *cf. Hazelwood*, 412 F. App'x at 618−19 (4th Cir. 2011) (finding unpersuasive defendant's contention that "that the officer's failure to determine the identity of the owners or residents of the [searched] home defeats a finding of probable cause, as there was ample evidence before the magistrate from which she could find a substantial likelihood that contraband would be found in [defendant's] residence").

To the extent that Plaintiffs argue that there was something unconstitutional about their subsequent prosecution based on evidence obtained during the execution of Search Warrants #2 and #3, despite their not being named as suspects in those warrants, they cite no pertinent authority in support of such contention and their argument is without merit. *See, e.g.*, *United States v. Ellison*, 632 F.3d 347, 350 (6th Cir. 2011) (noting that precedent does not require "the name or a description of a person . . . to establish probable cause for a search warrant") (citation omitted); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 555−56 (1978) (citations omitted) ("Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized. . . . The critical element in a reasonable search is not that the

---

[8] To the extent that the state court held that a search warrant is flawed if it does not describe the property of the person named on the face of the warrant (ECF 6-2 at 49), this Court does not agree with that conclusion.

owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.").

To the extent that Plaintiffs argue that Trooper Marsh obtained the warrants to search Plaintiffs' property for the purpose of obtaining evidence *against Plaintiffs* and only named Marvin White as a suspect in the stolen vehicle crimes on the warrant application to mislead the state judge (ECF 8 at 8−9), that argument also fails.

As noted above, Plaintiffs were not required to be named on the warrant or in the affidavit—either as suspects or as property owners—and the warrant and affidavit clearly demonstrated probable cause that at least evidence of Marvin White's alleged vehicle-theft crimes would be present on the identified property. That is, the warrants satisfied the Fourth Amendment.

Moreover, Plaintiffs have cited no pertinent authority in support of such a theory and Plaintiffs' Amended Complaint does not allege sufficient facts in support of such a theory. This is so even accepting as true Plaintiffs' assertion regarding Trooper Marsh's intent—i.e., that Trooper Marsh "new [sic] that his entry upon, and seizure of plaintiffs [sic] property was based upon the falsity contained in the affidavit . . . which misrepresented the grounds as being pertinent to Marvin White."

Plaintiffs' reference to Trooper Marsh's intentional misstatements or omission from the warrant and application suggests that here Plaintiffs may be asserting a violation of *Franks v. Delaware*, 438 U.S. 154 (1978). *See Evans*, 703 F.3d at 652 (reviewing claims pursuant to *Franks* where Plaintiffs' section 1983 claims involved allegations that that that police made false

11

statements or omissions material to the issuance of the search warrants); *see also Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007) (extending *Franks* to § 1983 claims).

As the Fourth Circuit has explained:

> *Franks* provides a two-prong test. First, plaintiffs must allege that defendants "knowingly and intentionally or with a reckless disregard for the truth" either made false statements in their affidavits or omitted facts from those affidavits, thus rendering the affidavits misleading. Second, plaintiffs must demonstrate that those "false statements or omissions [are] 'material,' that is, 'necessary to'" a neutral and disinterested magistrate's authorization of the search.

*Evans*, 703 F.3d at 650 (citations omitted).

"A *Franks* violation exists based on omitted facts if . . . the affidavit, if supplemented by the omitted information would not have been sufficient to support a finding of probable cause." *Hawkins v. Gage Cnty., Neb.*, 13-3107, ___ F. 3d ___, 2014 WL 3582886 at *7 (8th Cir. July 22, 2014) (internal quotation marks and citations omitted); *see also Evans*, 703 F.3d at 651 ("To determine materiality, we excise the offending inaccuracies and then determine whether or not the corrected warrant affidavit would provide adequate grounds for the search.") (internal quotation marks and citation omitted).

Here, Plaintiffs may be alleging that the search warrants were directed at them but that Trooper Marsh knowingly and intentionally omitted this fact and that Plaintiffs were the owners of the property to be searched. Even assuming without deciding that Plaintiffs allege sufficient facts that this information was purposely omitted by Trooper Marsh, that does not answer the question of whether Plaintiffs have sufficiently pleaded a *Franks* violation. For that to be the case, the omission must have been material.

With respect to materiality, the "corrected" affidavit would have explicitly stated the fact that the property to be searched was owned by Plaintiffs and that it was not owned by Marvin

12

White. This fact, however, does nothing to defeat probable cause in consideration of the affidavit's particularized description of the place to be searched and the significant detail provided in the affidavit that supports the conclusion that there was a fair probability that evidence of a crime would be found on the property described. Similarly, the rescission of Marvin White's name from the warrant would also not impact the constitutionality of the warrant for the reasons stated above.

Accordingly, for each of these reasons, the Court concludes that Plaintiffs have not pled a Fourth Amendment violation and that the Amended Complaint therefore fails to state a claim as a matter of law and must be dismissed.[9]

### IV. CONCLUSION

For these reasons, Plaintiffs' motion to amend the Complaint [ECF 9] is **GRANTED**, Defendants' motion to dismiss [ECF 6] is also **GRANTED**, and Plaintiffs' Amended Complaint [ECF 9] is **DISMISSED WITH PREJUDICE**. The Court **DIRECTS** the Clerk to remove this case from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record.

---

[9] To the extent that Plaintiffs' Amended Complaint also alleges against Defendants a "state constitutional tort" count based on a violation of "Article III, Section 6 of the West Virginia Constitution, which incorporates the constitutional rights guaranteed to Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution" (ECF 9-1 at 5−6), Plaintiffs acknowledge that this count is predicated on the assertion that a Fourth Amendment violation occurred when Trooper Marsh presented the warrants to the circuit court judge and then executed the searches (ECF 8 at 5). Because Plaintiffs have not alleged a Fourth Amendment violation, however, the Court concludes that this count must also be dismissed. *Cf. State v. Duvernoy*, 195 S.E.2d 631, 634 (W. Va. 1973) (noting that the West Virginia Supreme Court of Appeals "has traditionally construed Article III, Section 6 in harmony with the Fourth Amendment").

ENTER: September 8, 2014

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE